**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| IN RE BAYCOL PRODS. LITIG. ) | |
| ) | MDL No. 1431 |
| This Document Relates to: ) | (MJD/SRN) |
| ) | |
| *United States ex rel. Simpson v.* ) | Case. No. 08-5758 |
| *Bayer Healthcare, et al.* ) | |

**BAYER'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL**

When relator Laurie Simpson left Bayer's employ, she took a stack of documents, some containing communications reflecting legal advice from Bayer's Legal Department. After months of evading requests for return of those materials, Ms. Simpson now has refused, asserting that Bayer has not established a "sufficient" basis for the attorney-client privilege. Ex. N (Letter of November 5, 2009). Apparently, Ms. Simpson thinks that the documents, which explicitly relay the legal advice of Bayer's Legal Department, are not privileged because they were not authored by a lawyer.

Ms. Simpson's crabbed view of the attorney-client privilege is contrary to the law. More fundamentally, she is not entitled to control documents containing information protected by Bayer's attorney-client privilege. This Court therefore should compel Ms. Simpson to return all copies of the privileged documents she possesses, and should further compel Ms. Simpson to permit Bayer counsel to examine all Bayer documents in her possession or control to ensure no additional privileged materials are among them.

## BACKGROUND

Eighteen months after it was filed, this *qui tam* action was unsealed on April 24, 2008, and subsequently transferred to this Court on October 9, 2008 for coordinated pretrial proceedings in MDL 1431. *See* Docket Doc. No. 15. To advance discovery and explore the possibility of settlement, the parties agreed to informally exchange documents pertaining to Ms. Simpson's claims. That exchange occurred in early 2009.

Ms. Simpson produced more than one thousand pages. Bayer does not know whether those documents constitute all the documents that Ms. Simpson took from Bayer. Bayer does know that Ms. Simpson has some documents reflecting the advice of Bayer's Legal Department because she produced two such documents. In both, a Bayer employee states in an e-mail what Bayer's Legal Department required for a particular matter. Ex. B (LST000000984-985) (submitted *in camera*); Ex. C (LST000000998-1000) (submitted *in camera*).

For the last six months, Bayer has attempted to secure the return of these and any other privileged materials in Ms. Simpson's possession. Bayer first contacted Ms. Simpson's (now former) counsel – David Stone and Eric Jaso. On April 3, 2009, Bayer counsel informed Mr. Jaso that LST000000984-985 and LST000000998-1000 contained privileged material, requested the return of all copies of those documents, and asked for the opportunity to review all Bayer documents possessed by relator to ensure that she did not have any other privileged materials. Ex. E (Letter of April 3, 2009). In response, Mr. Stone informed Bayer that neither he nor Mr. Jaso would be representing

Ms. Simpson, and therefore they were "not in a position to retrieve or secure the documents" in question. Ex. F (Letter of April 6, 2009); *see also* Ex. H (Letter of April 20, 2009).[1] On April 13, 2009, Bayer reiterated its request. Ex. G (Letter of April 13, 2009). In response, relator's counsel reiterated its position. Ex. H (Letter of April 20, 2009).

By this time, Bayer had learned that Ms. Simpson was marketing herself as a "consultant" in other litigation involving Bayer. Ex. A (Letter of March 19, 2009). With counsel of record either unwilling or unable to assist Bayer in retrieving privileged information and Ms. Simpson offering to divulge the information she possesses for pay, Bayer sought assistance from the Court. On May 28, 2009, Bayer moved the Court for an order withdrawing Mr. Stone as counsel and requiring Ms. Simpson to substitute new counsel or appear pro se. *See* Docket Doc. Nos. 21, 22. On May 29, 2009, the Court granted Bayer's motion, and required Ms. Simpson to substitute counsel or appear pro se within 60 days. *See* Docket Doc. No. 23.

When Ms. Simpson's new counsel appeared 62 days later, Bayer renewed its previous requests. Ex. I (Emails of August 12 and 13, 2009); Ex. J (Letter of September 11, 2009); Ex. K (Letter of October 16, 2009). Ms. Simpson's counsel finally responded by demanding the basis for Bayer's privilege claim and rejecting as "premature" Bayer's request to review Ms. Simpson's documents. Ex. L (Letter of

---

[1] Mr. Stone advised the Court by letter on March 27, 2009 that Ms. Simpson would be obtaining new counsel. *See* Ex. D (Letter of March 27, 2009). He had not withdrawn as counsel as required by Local Rules, however. In fact, Mr. Stone was still counsel of record for Ms. Simpson until May 29, 2009. *See* Docket Doc. No. 23 (ordering Stone withdrawn as counsel for Ms. Simpson on May 29, 2009).

3

October 22, 2009). Bayer then set forth the basis for its claim of privilege – that the documents in question contained statements reflecting the advice of Bayer's Legal Department – and reiterated its request to review Ms. Simpson's documents in view of her apparent willingness to divulge information to plaintiffs' counsel in other litigations as a paid "consultant." Ex. M (Letter of October 29, 2009). On November 5, 2009, Ms. Simpson's counsel rejected Bayer's requests, claiming: "You have not sufficiently asserted that the two documents in question are communications between an attorney and a client or that they reveal any legal advice." Ex. N (Letter of November 5, 2009).

After more than six months of back and forth, Bayer's good faith efforts to recover privileged information from Ms. Simpson have failed. Bayer therefore respectfully requests that this Court grant it the relief that Ms. Simpson and her counsel have been unwilling to provide.

**ARGUMENT**

I.   THE ATTORNEY-CLIENT PRIVILEGE PROTECTS DOCUMENTS POSSESSED BY MS. SIMPSON.

The attorney-client privilege protects communications that reflect the advice of Bayer's Legal Department. *See Upjohn Co. v. U.S.*, 449 U.S. 383, 390-97 (1981) (setting forth relevant principles for the application of the attorney-client privilege in the corporate context). The two documents in question, e-mails between Bayer employees that relay what is required by Bayer's Legal Department for certain matters, meet this test. And Ms. Simpson may hold other such privileged materials.

Ms. Simpson apparently believes that there can be no attorney-client protection for documents not sent directly to or from a lawyer. That is incorrect. Settled law holds that the "essential elements" of the attorney-client privilege "do not require an attorney to have either authored or received the document at issue in order to maintain the privilege." *Williams v. Sprint/United Mgmt. Co.*, No. 03-2000, 2006 WL 266599, at *2 (D. Kan. Feb. 1, 2006). As one court explained, in rejecting Ms. Simpson's apparent position:

> The plaintiffs seem to suggest that the lack of any participation by an attorney as author or recipient means these notes cannot be privileged … . But the privilege issue is not settled by authorship or participation. The question is whether the communications rest on confidential information obtained from the client, or would reveal the substance of a confidential communication by the client . . . . It is enough that the notes reveal, directly or indirectly, the substance of a confidential attorney-client communication.

*In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 433 (N.D. Ill. 2006). Put another way, because the privilege protects *communications* between lawyer and client, and because those communications can be transmitted from one nonlawyer to another, the privilege is not confined to documents that are sent by or to a lawyer. *See SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 477 (E.D. Pa. 2005) ("A document need not be authored or addressed to an attorney in order to be properly withheld on attorney-client privilege grounds").

For example, the privilege attaches to documents "transmitted between non-attorneys to relay information requested by attorneys." *Santrade, Ltd. v. Gen. Elec. Co.*, 150 F.R.D. 539, 545 (E.D.N.C. 1993); *accord*, *e.g.*, *In re N.Y. Renu with Moistureloc*

5

*Prod. Liab. Litig.*, No. 2:06-MN-77777, 2008 WL 2338552, at *10 (D.S.C. May 8, 2008); *SmithKline Beecham*, 232 F.R.D. at 477.  Privilege also extends to the provision of information necessary to a lawyer's rendering of legal advice, which in the corporate setting invariably involves communications among nonlawyers.  *See Upjohn*, 449 U.S. at 390  (privilege protects the "giving of information to the lawyer to enable him to give sound and informed advice"); *Williams*, 2006 WL 266599 at *3 ("In preparation for, or in the midst of, consultations with an attorney, employees of the client will often consult one another to ensure that the attorney's advice is based on full knowledge of all relevant facts"); *Santrade*, 150 F.R.D. at 545 ("Corporations may communicate privileged information at various levels without waiving the attorney-client privilege").

Similarly, the privilege attaches where confidential legal advice is "transmitted between non-attorneys . . . so that the corporation may be properly informed of legal advice and act appropriately."  *Santrade*, 150 F.R.D. at 545; *see also Lafarge N. Am., Inc. v. Matraco-Colo., Inc.*, No. 07-80112, 2008 WL 2474638, at *6 (S.D. Fla. June 19, 2008) (holding that "an e-mail between non-attorney Lafarge representatives" was privileged because "it includes an attorney-client privileged e-mail forward with [counsel's] analysis of issues and request for follow-up information"); *SmithKline Beecham*, 232 F.R.D. at 477 (privilege attaches to documents that, "while not involving employees assisting counsel, still reflect confidential communications between client and counsel"); *Baltimore Scrap Corp. v. David J. Joseph Co.*, No. L-96-827, 1996 WL 720785, at *6 (D. Md. Nov. 20, 1996) (finding that the privilege attached to a memo from one nonlawyer to another because the memo was a "recapitulation of [counsel's] legal

6

advice"). "Courts have consistently recognized that this type of intra corporate distribution of legal advice received from counsel does not vitiate the privilege even though the legal advice is relayed indirectly from counsel through corporate personnel." *Baltimore Scrap*, 1996 WL 720785 at *6.

Here, documents LST000000984-985 and LST000000998-1000 explicitly convey the legal advice of Bayer lawyers between Bayer employees required to act upon that advice. Those communications are privileged, as are any other documents in Ms. Simpson's possession that reflect the advice of Bayer's Legal Department. The Court should compel Ms. Simpson to return all copies of all such documents to Bayer.

II.   THE PRIVILEGE IS BAYER'S, NOT MS. SIMPSON'S.

The privilege attached to these documents – and any similar Bayer documents in Ms. Simpson's possession – is Bayer's, not Ms. Simpson's. "[T]he privilege belongs to the corporation, because the corporation is the client," and not to agents and employees of the corporation. *Dexia Credit Local v. Rogan*, 231 F.R.D. 268, 277 (N.D. Ill. 2004). Accordingly, displaced employees may not assert or waive the privilege over the wishes of the corporation, "even as to statements that the former might have made to counsel concerning matters within the scope of their corporate duties." *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 349 (1985); *see also id.* at 348-49 ("the authority to assert and waive the corporation's attorney-client privilege" rests with the corporation).

Ms. Simpson's right to view privileged information ceased at the time her employment with Bayer terminated. *See Dexia Credit*, 231 F.R.D. at 277 (former

7

officer's right to privileged information ended with employment); *Montgomery v. eTreppid Techs., LLC*, 548 F. Supp. 2d 1175, 1184-85 (D. Nev. 2008) (same, collecting cases).  Accordingly, the Court should compel the return of all copies of documents containing privileged information that Ms. Simpson took with her when she left Bayer, or otherwise has in her possession or control.

III.   THE COURT SHOULD COMPEL MS. SIMPSON TO PERMIT COUNSEL FOR BAYER TO CONDUCT A FULL REVIEW OF ALL DOCUMENTS IN HER POSSESSION PERTAINING TO THIS MATTER.

For the years since she left Bayer's employ, Ms. Simpson has wrongfully retained documents containing privileged information that she has no right to possess.  For months, Bayer has attempted to secure the return of those documents and has been stonewalled each step of the way.  At first, it was counsel's inability or unwillingness to act as counsel.  Ex. F (Letter of April 6, 2009).  Now, it is denial of Bayer's rightful claim of privilege.  Ex. N (Letter of November 5, 2009).

Bayer respectfully requests that the Court take action.  All the while that Ms. Simpson's counsel has refused to cooperate in returning  Bayer's privileged documents, Ms. Simpson has been marketing her services as a "consultant" to plaintiffs' counsel in other litigation involving Bayer.  Ex. A (Letter of March 19, 2009).  Moreover, in opposing Bayer's motion to dismiss her *qui tam* complaint, Ms. Simpson has publicly disclosed communications between herself and Bayer counsel that are protected by Bayer's attorney client privilege and by the work product doctrine.  *See* Memorandum of Law in Opposition to Defendants' Motion to Dismiss, Docket Entry 29, at 24-25; Declaration of Laurie Simpson, Docket Entry 30, at ¶¶ 9-10.

In view of the inability or unwillingness of Ms. Simpson's counsel to recognize privileged information contained in the two documents Bayer has identified, the Court should take no comfort in counsel's assertion of their ability to identify and return other privileged materials on their own. Ex. L (Letter of October 22, 2009) ("we will continue to comply with our legal requirements regarding any possibly privileged documents that come to our attention").  Accordingly, Bayer respectfully requests that the Court compel Ms. Simpson to allow Bayer's counsel to conduct a full review of all documents in her possession to ensure that additional privileged materials are identified and returned to Bayer.

## CONCLUSION

For the foregoing reasons, Bayer respectfully requests that the Court issue an Order:

(1) compelling the return of the original and all copies of the documents labeled LST000000984-985 and LST000000998-1000; and

(2) compelling Ms. Simpson to permit counsel for Bayer to conduct an open review of all documents in her or her current or former counsel's possession for the purpose of identifying other privileged materials.

November 13, 2009

Respectfully submitted,

Philip S. Beck
Adam Hoeflich
BARTLIT BECK HERMAN
 PALENCHAR & SCOTT LLP
54 W. Hubbard Street, Suite 300
Chicago, IL 60603
(312) 494-4400

Karma M. Giulianelli
BARTLIT BECK HERMAN
 PALENCHAR & SCOTT LLP
1899 Wynkoop Street, 8th Floor
Denver, Colorado 80202
(303) 592-3165

/s/ signature on file
Susan A. Weber
James R.M. Hemmings
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

Peter W. Sipkins
DORSEY & WHITNEY LLP
50 S. Sixth St., Ste 1500
Minneapolis, MN 55402
(612) 340-2600

*Counsel for Defendant Bayer Corporation*