# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

*In re* BAYCOL PRODUCTS LITIGATION

MDL No. 1431
(MJD/SRN)

This Document Relates to:

Case No. 08-5758

*United States of America ex rel. Laurie Simpson*
*v. Bayer Healthcare d/b/a Bayer Healthcare Pharma, et al.*

## MEMORANDUM OF LAW IN OPPOSITION TO

## DEFENDANTS' MOTION TO COMPEL

OLSHAN GRUNDMAN FROME
ROSENZWEIG & WOLOSKY LLP
*Attorneys for Relator*
Park Avenue Tower
65 East 55th Street
New York, New York 10022
(212) 451-2300

BOIES, SCHILLER & FLEXNER LLP
*Attorneys for Relator*
333 Main Street
Armonk, NY 10504
(914) 749-8200

857809-2

## PRELIMINARY STATEMENT

Bayer requests a groundless pre-discovery peek at Relator Laurie Simpson's evidence, demanding judicial imprimatur for what is obviously a fishing expedition through "all documents in her possession," despite the fact that Bayer's motion to dismiss Ms. Simpson's complaint is still pending. (Bayer's Memorandum in Support of Motion to Compel ("Bayer Br.") at 9). Unable to cite any supporting authority, Bayer's only basis for its demand is the conclusory allegation that Ms. Simpson possesses two email chains that it alleges are subject to attorney-client privilege. However, Bayer never bothers to describe or explain to the Court the actual content of these communications. Instead, it relies on divergent, nonspecific characterizations that represent an entire spectrum of possibilities. For example, Bayer suggests at various points that the emails merely "reflect" legal advice (Bayer Br. at 1, 4), that they somehow "recapitulate" legal advice (Bayer Br. at 6), and finally that they "explicitly relay" legal advice (Bayer Br. at 1). These characterizations misstate the actual standard for privilege in the corporate context, which the emails do not meet.

In reality, the two email chains are communications from non-attorney Baycol marketing directors, which were distributed to non-attorney Bayer employees, and which related to a marketing questionnaire to be answered by doctors. These are not communications between an attorney and a client. The emails do not recapitulate, relay or reveal the contents of any communication between an attorney and a client. The information to be collected by the questionnaires and feedback was to be provided by non-employees of Bayer, and was not intended for use by counsel. Although the emails do contain the word "legal," it is black-letter law that the mere incantation of the word cannot conjure up privilege where no basis for it exists.

2

Nevertheless, Bayer asks the Court, under the guise of a Motion to Compel pursuant to Rule 37 of the Federal Rules of Civil Procedure, to sanction a fishing expedition through every document in Ms. Simpson's possession.  Conspicuously, Bayer never cites Rule 37 in its brief, and never indicates the subsection of the rule that it believes would justify such pre-discovery production.  The explanation is simple:  Rule 37 applies only during discovery, when the parties have properly met, conferred and agreed to procedures that make an order compelling production appropriate.  The federal rules do not authorize Bayer's pre-discovery motion to compel, and there is no basis to compel production of documents in this case where no discovery request has been made.  Bayer's attempt to force Ms. Simpson to incur the expense of producing all Bayer documents in her possession should be rejected by the Court, especially in light of its complete inability to cite any authority sanctioning such a demand.



### STATEMENT OF FACTS

<u>The Informal Exchange of Documents</u>

As Bayer concedes, discovery in this action has not yet commenced.  Instead, Ms. Simpson voluntarily agreed to an informal exchange of documents with Bayer that occurred in early 2009, in which she produced more than a thousand pages of documents.  This informal

exchange was pursuant to an agreement entered into in December 2008 (the "Informal Exchange Agreement"), in which the parties expressly agreed that the informal exchange would not in any way broaden discovery. (Simpson Decl. Ex. A ¶ 7).

### Bayer's Assertion of Privilege

Regardless, Bayer's counsel claimed in an April 3, 2009 letter to Ms. Simpson's former counsel that two of the over one thousand documents produced by Ms. Simpson were privileged. Bayer's counsel then demanded that she produce all Bayer documents in her possession to Bayer purportedly because Bayer wished to inspect them all for privilege. (Bayer Br. Ex. E).

### The Emails at Issue

The communications at issue are two email chains from 2003, bates-stamped Nos. 984-985, 998-1000, sent by non-attorney Baycol marketing directors and distributed to non-attorney Bayer employees, including to Ms. Simpson, a member of the market research team. The emails relate to physician questionnaires and feedback regarding certain promotional meetings. These doctors were purportedly hired by Bayer as "consultants" to provide market insight and feedback based on their opinions of certain Bayer products. The emails were not sent to or from Bayer's counsel, nor do they contain any legal advice from Bayer's counsel. Indeed, the only reference to Bayer's counsel in the emails is a reference to the fact that Bayer's legal department had certain requirements for advisory meetings. However, no legal advice given by Bayer's legal department regarding the institution of such formation is revealed in the emails. (Bayer Br. Exs. B and C).

**REDACTED**

**REDACTED**

███████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████

████████████████████████████████████

██████████████████████████████████

███████████████████████████████████

████████████████████████████████████

██████████████████████████████████

██████████

<u>Bayer Fails to Provide a Basis for Its Demands</u>

When Ms. Simpson retained additional counsel due to the departure of her former attorneys David Stone and Eric Jaso from their firm Boies, Schiller & Flexner LLP, her new attorneys required time to review the case and the ongoing issues. In fact, in an August 2009 conversation, Adam Hoeflich (counsel for Bayer) told Robert W. Sadowski (Ms. Simpson's new counsel) that the issue regarding the privileged documents could be put on hold until after Bayer's motion to dismiss was fully briefed. Hoeflich also represented that Bayer would provide a basis for its requests. Despite these representations, Bayer continued to send conclusory letters demanding the right to inspect all documents in Ms. Simpson's possession based on the two purportedly privileged documents.

Ms. Simpson timely filed opposition papers to Bayer's motion to dismiss that fully complied with the court-ordered briefing schedule. Her new counsel responded to Bayer's

requests by letter dated October 22, 2009, before the briefing of the motion to dismiss was even completed.[1]  In the letter, Ms. Simpson's counsel repeated his demand that Bayer's counsel provide a basis for his requests and asked that that the parties' counsels participate in a conference call to resolve these issues.  Ms. Simpson's counsel asserted in the letter that Bayer's requests were premature because discovery had not yet started **REDACTED** (Bayer Br. Ex. L).  Bayer's counsel, in a letter dated October 29, 2009, responded with a mere conclusory statement that its requests were not premature, quoting the sole appearances of the word "legal" in the emails without giving any further explanation.  (Bayer Br. Ex. M).  Ms. Simpson's counsel, in a letter dated November 5, 2009, responded by pointing out that Bayer's purported basis for claiming privilege was inadequate and requested that Bayer provide it with legal authority supporting Bayer's requests.  (Bayer Br. Ex. N).  Bayer's counsel never disclosed any basis whatsoever for its requests for Ms. Simpsons' production of all her documents.  Bayer's counsel then filed this motion on November 13, 2009, without first holding a telephone conference with Ms. Simpson's counsel and attempting to resolve the disputes, as requested by Ms. Simpson's counsel.  Bayer never even offered to help to resolve the issues by offering to pay Ms. Simpson's expense in producing the documents at issue before discovery and the pending motion to dismiss is decided.

## ARGUMENT

**A.    The Party Seeking Privilege Bears the Burden of Showing It Applies**

Attorney-client privilege is disfavored by the courts because it serves to obscure the truth.  As such, it should be construed narrowly.  *Diversified Indus., Inc. v. Meredith,* 572 F.2d 596, 616 (8th Cir. 1977); *U.S. v. Suarez*, 820 F.2d 1158, 1160 (11th Cir. 1987).  The benefits of the

---

[1] Indeed, Bayer failed to meet the ample court-ordered time to submit its reply brief to its motion to dismiss, and Ms. Simpson graciously agreed to extend such time.

privilege "are, at best indirect and speculative. It must be strictly confined within the narrowest possible limits consistent with the logic of its principle." *Smithkline Beecham Corp. v. Apotex Corp*, 232 F.R.D. 467, 472 (E.D. Pa. 2005). Accordingly, the burden is on the party seeking privilege to establish that it applies. *Id.*; *U.S. v. Humphreys*, 982 F.2d 254, 259 (8th Cir. 1992). Bayer has articulated inapplicable standards and cited unsupportive cases. In doing so it has failed to meet this burden.

**B.      Privilege Protects Only Communications Made in Confidence for the Primary Purpose of Obtaining Legal Advice**

Contrary to Bayer's assertions, privilege does not protect all communications "reflecting" legal advice. (Bayer Br. at 1, 2, 4). If this were the case, any intra-corporate communication in a highly-regulated industry would be privileged since so much of it "reflects," in one way or another, legal advice about the regulations that govern it. Under Bayer's conclusions, any email, telephone conversation or facsimile created in conformity with a corporate policy based on legal advice would be privileged.

By employing vague, nonspecific terms such as "reflecting" legal advice, Bayer seeks to disregard the standard explained in the very decisions they cite. *Upjohn*, *Williams*, *Santrade, Smithkline* and *LaFarge* - Bayer's own cases - make clear that the scope of the attorney-client privilege within a corporation is much more limited. Privilege applies only to communications made in confidence for the primary purpose of obtaining legal advice. *Williams v. Sprint/United Mgmt. Co.*, 2006 WL 266599, at *3 (D. Kan. Feb. 1, 2006); *Smithkline,* 232 F.R.D. at 473; *LaFarge v. Matraco-Colorado, Inc.*, 2008 WL 2474638, at *5 (S.D. Fla. 2008); *U.S. v. Horvath*, 731 F.2d 557, 561 (8th Cir. 1984) citing *In re Malone*, 655 F.2d 882, 886 (8th Cir. 1981). Thus, the law of privilege calls for a two-part inquiry: First, the communication must be made for the

7

primary purpose of obtaining legal advice. Second, it must be made in confidence. The emails in question fail to satisfy either requirement.

       1.      <u>The Emails at Issue Were Not Written for the Purpose of Obtaining Legal Advice</u>

The email communications fail under the first requirement because they were not written for the purpose of obtaining legal advice. They are communications from one non-attorney to another discussing the ordinary course of business. It is irrelevant to Bayer's claim of privilege that the legal department at Bayer had requirements for advisory meetings, since these emails do not reveal or expose any privileged information whatsoever, were never forwarded to an attorney for the purpose of obtaining legal advice, and therefore, are too far removed from any communication with an attorney to give rise to privilege. *Enron Corp. Sav. Plan v. Hewitt Assoc., L.L.C.*, 258 F.R.D. 149, 165 (S.D. Tex. 2009) (RFP no. 32: no privilege over documents implementing a quality control program created by counsel); *Smithkline,* 232 F.R.D. at 477 (citing *Smithkline Beecham Corp. v. Apotex Corp.*, 193 F.R.D. 530, 538 (N.D. Ill. 2000)) ("Documents, although described as requesting legal advice, are communications between two or more non-legal advisors, a copy of which may or may not have been forwarded to a patent agent. We cannot find such communications meet the requirements for establishing privilege."); *Algonquin Heights v. U.S.*, 2008 WL 2019025, at *8 (Ct. Cl. Feb 29, 2008) (no privilege over testimony about policy and implementation of policy created pursuant to legal advice); *In re Malone*, 655 F.2d at 886 (ordinary business records not privileged).

Neither of the email chains reveals or even hints at the content of any privileged information, let alone "recapitulates" legal advice, as Bayer erroneously suggests. (Bayer Br. at 6). As *LaFarge* makes clear, communications in the ordinary course of business not made for the purpose of securing legal advice are not privileged, even if they "reflect" an attorney's advice

and the attorney was named in the communication. *Lafarge*, 2008 WL 247463 at *5. (Bayer Br. p. 6).

The emails were intra-corporate communication, and *Upjohn v. U.S.*, 449 U.S. 383, 394 (1981) makes clear that intra-corporate communication can be privileged only if it is made for the purpose of obtaining the factual information necessary to give competent legal advice to the corporation. *Id.* In *Upjohn*, "[t]he communications at issue *were made by Upjohn employees to counsel* for Upjohn acting as such, at the direction of corporate superiors *in order to secure legal advice from counsel.*" *Id.* (emphasis added). The Bayer emails in question do no such thing. (Bayer Br. Exs. B and C). Far from seeking to gather information for the purpose of giving legal advice, the emails seek to implement a matter in the ordinary course of business.

Furthermore, Bayer's reliance on *Santrade*, 150 F.R.D. 539 (1993), is an exercise in creative citation. *Santrade*, like *Upjohn*, does stand for the proposition that privilege can sometimes attach to communications between non-lawyers within a corporation. *Id.* at 545. But the communications at issue in *Santrade* were privileged "because they repeat[ed] the legal advice of an attorney." *Id.* The emails do no such thing. On the contrary, they contain no legal advice and reveal no confidential information.

Finally, Bayer's citation of *Smithkline* - the source of the "reflect" language employed so often in their brief - is incomplete and misleading. Bayer quotes only the first half of the relevant sentence in *Smithkline*: "[p]rivilege attaches to documents that, 'while not involving employees assisting counsel, still reflect confidential communications between client and counsel'." (Bayer Br. at 6 (quoting *Smithkline*, 232 F.R.D. at 477)). Bayer fails to quote the rest of the sentence, which continues "…for the purpose of either (1) providing legal services or (2)

9

857809-2

providing information to counsel to secure legal services." *Smithkline*, 232 F.R.D. at 477. The communications in question here were not made between client and counsel, were not made for the purpose of providing legal services, and did not provide information to counsel to secure legal services. In context, the "reflect" language used in *Smithkline* does not help Bayer.

    2.    <u>The Emails Were Not Made in Confidence</u>

The email communications also fail to meet the requirements to be deemed privileged because they were not made in confidence. There was no indication that the senders intended their contents to be kept confidential, and the communications were sent to multiple Bayer employees. One of the emails at issue in *Smithkline* is apposite. The court found the email, a communication to the corporation's management team, was too broadly distributed to be held in confidence. *Id.* at 478. Likewise, there is no indication that the communications here were intended to be held in confidence.

**C.** **REDACTED**

857809-2

**D.** **REDACTED**

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████

████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████

**E.** **Bayer Has No Right to "A Full Review of All Documents" in Ms. Simpson's Possession**

Even if the emails in question were privileged, Bayer should not be permitted to "conduct a full review of all documents" in Ms. Simpson's possession.

1. <u>A Motion to Compel Production Is Not Properly Brought before Discovery Has Begun</u>

Federal Courts across the country have reiterated the directive plainly expressed in the Federal Rules of Civil Procedure: A motion to compel is inappropriate before the discovery phase of litigation. *Bolin v. U.S.*, 1999 WL 674553, at *1 (N.D. Ga. 1999) (motion to compel inappropriate before discovery served). Bayer is unable to cite a single decision supporting its demand to inspect all of Ms. Simpson's documents, because under Federal Rule of Civil

11

857809-2

Procedure 26(d), a party is prohibited from seeking discovery before the parties have conferred as required by Rule 26(f). Here, the court has yet to enter a Scheduling or Trial Order, and the parties have not conferred pursuant to Rule 26(f). "[A] motion to compel filed before that conference is premature… and violates Rule 26(d)," and Bayer's motion must therefore be denied. *Arias v. Dyncorp*, 517 F. Supp.2d 221, 230 (D.D.C. 2007) (citing *Witham v. Christian County Sheriffs Dep't*, 2006 WL 522438, at *1 (W.D. Mo. Mar. 3, 2006) (denying motion to compel as premature before Rule 26 conference)); *Fox v. Poole*, 2006 WL 2528535, at *2 (W.D.N.Y. Aug. 31, 2006) (denying motion to compel filed pre-discovery); *Amerisourcebergen Drug Corp. v. Burks*, 2006 WL 2690989, at *2 (N.D. W.Va. 2006) (same).

Indeed, the Informal Exchange Agreement expressly provides that the informal exchange would not broaden the scope of discovery, and thus prohibits Bayer's attempt to go on a pre-discovery fishing expedition before its pending motion to dismiss has been decided. (Simpson Decl. Ex. B ¶ 7).

Bayer also argues that it is entitled to review all of Ms. Simpson's Bayer documents because Ms. Simpson has publicly disclosed privileged information in her opposition papers to Bayer's motion to dismiss and is marketing herself as a consultant to plaintiffs' counsel in other litigation. These desperate and false allegations only highlight the total lack of merit of Bayer's motion.

First, the "privileged information" purportedly disclosed in Ms. Simpson's opposition is her response to Bayer's argument that her prior deposition testimony bars her from bringing this *qui tam* action and demonstrates she did not have the requisite knowledge of Bayer's misconduct to bring a *qui tam* action. Ms. Simpson properly responded by pointing out that Peter W.

Sipkins, counsel for Bayer on this very motion and the motion to dismiss, prepared Ms. Simpson for that deposition for twelve days, and that he instructed her to give terse literal answers at her deposition and to not volunteer any information. Ms. Simpson also noted that he was aware of her knowledge of Bayer's misconduct. Bayer's attempt now, after opening this door, to silence Ms. Simpson's offering of proper evidence in opposing the motion to dismiss, is disingenuous, and highlights the lack of merit both of this motion and in Bayer's motion to dismiss.

**REDACTED**

2.  <u>Bayer Would Not Be Entitled to a Motion to Compel Production Even if Discovery Had Commenced</u>

The Eighth Circuit has made clear that a party is not entitled to the production of documents if it cannot identify the documents to which it is entitled. In *Heart of America Grain Inspection Service, Inc. v. Missouri Dept. of Agriculture*, 123 F.3d 1098, 1107 (8th Cir. 1997), the requesting party knew from deposition testimony that the responding party was in possession

13

857809-2

of documents that were relevant, responsive and not subject to privilege, but it was unable to identify those documents. *Id.* As a result, the Eighth Circuit upheld the District Court's denial of its motion to compel. *Id.* Here, not only is Bayer unable to identify any documents that are privileged, it is unable to base its demand on any compelling evidence that such documents exist.

## CONCLUSION

Based on the foregoing, Relator respectfully requests that the Court deny defendants' motion to compel.

Dated: New York, New York
December 4, 2009

OLSHAN GRUNDMAN FROME ROSENZWEIG & WOLOSKY LLP

By: /s/ Robert W. Sadowski
Robert W. Sadowski
Raphael Katz
*Attorneys for Relator Laurie Simpson*
Park Avenue Tower
65 East 55th Street
New York, New York 10022
(212) 451-2300

BOIES, SCHILLER & FLEXNER LLP

By: /s/ Edward Normand
Edward Normand
*Attorneys for Relator Laurie Simpson*
333 Main Street
Armonk, NY 10504
(914) 749-8200

857809-2

**CERTIFICATE OF SERVICE**

  I, Robert Sadowski, hereby certify that on this 4th day of December, 2009, true and correct copies of the foregoing Memorandum of Law in Opposition to Defendants' Motion to Compel were electronically filed and served on all attorneys of record and liaison counsel.

                <u>/s/ Robert W. Sadowski</u>
                Robert Sadowski

858316-1