## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| *In re Baycol Products Litigation* | ) | |
| United States of America *ex rel.* | ) | |
| Laurie M. Simpson | ) | |
| | ) | |
| Plaintiff-Relator, | ) | MDL No. 1431 |
| | ) | Civil No. 08-5758 (MJD)(ECW) |
| v. | ) | |
| | ) | |
| Bayer Corp. et al., | ) | Hon. Michael J. Davis |
| | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO QUASH RELATOR'S DEPOSITION SUBPOENAS

### [REDACTED PUBLIC VERSION]

Relator's 20-year-old allegations have unraveled. The allegedly defrauded party, the Department of Defense ("DoD"), has not contended it was defrauded, has not produced any evidence it was defrauded, and does not even want to sit for a deposition, citing the burden and age of this case. The unequivocal testimony of Bayer's 30(b)(6) witness remains unrefuted: ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅

▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅

▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅

▅▅▅▅▅▅   Despite the passage of nearly two decades, Relator has not produced or identified any evidence contradicting this testimony.

1

Out of options, Relator now seeks to depose Bayer's 30(b)(6) witness, Dr. Mark West, *again*, this time supposedly in his personal capacity, hoping for a different response to the same questions. She also seeks to burden Bayer with the depositions of several other former employees, who have even less information about the events in question and who collectively sat for 35 combined days of depositions in closely related MDL and Securities Litigation proceedings. Relator cannot justify this last-ditch effort in light of the obvious and disproportionate burden that these duplicative depositions would impose on the these former employees who are now third-party deponents. Bayer therefore respectfully moves to quash the deposition subpoenas.

## BACKGROUND

This is a very, very old and, now, very narrow case. Relator Laurie Simpson used to work in marketing at Bayer, and she filed this case in 2006 asserting a range of marketing-related allegations. After successive dismissals and appeals, however, the case has been reduced to a single alleged issue: whether Bayer fraudulently induced DoD to enter two contracts. *In re Baycol Prod. Litig.*, 732 F.3d 869 (8th Cir. 2013) ("*Baycol I*"); *In re Baycol Prod. Litig.*, 870 F.3d 960 (8th Cir. 2017) ("*Baycol II*").

In 1999, DoD awarded Bayer an initial contract for Bayer's cholesterol-lowering statin drug, Baycol. Due to the statute-of-limitations, the only two contracts left at issue in this case are a one-year extension (the "January 2001 Contract"), and a blanket purchase agreement for a different dose of Baycol (the "February 2001 Contract") (collectively the "DoD Contracts"). DoD has never contended that it was fraudulently induced to enter into either contract and has produced no evidence of fraudulent inducement.

2

Before Relator filed this *qui tam* action in the District of New Jersey, Baycol was the subject of extensive MDL proceedings in this Court. The MDL had six bellwether trials between 2003 and 2008, all of which resulted in verdicts for Bayer.[1] Relator's *qui tam* case was unsealed in April 2008, and, in October 2008, it was transferred to this Court "for inclusion" in the MDL due to the "common questions of fact." *In re Baycol Products Liability Litig.*, 0:08-md-01431-MJD, Dkt. 4258 (Oct. 9, 2008). The transferring court found that consolidation would "serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation." *Id*.

Because of the "common factual core," *id.*, MDL materials have been a main source of discovery in this case. Following transfer, Bayer provided the full Baycol MDL document production to Relator on November 20, 2008. More recently, Bayer produced, again, more than 1.3 million documents. Bayer also produced 61 deposition transcripts from the Baycol MDL for the 14 witnesses that Relator requested, as well as 4 deposition transcripts from the Baycol Securities Litigation, even without Relator's specific request that it do so. Specific to this case, Bayer has produced over 10,000 additional pages of documents and provided substantive responses to two sets of Interrogatories from Relator.

---

[1] *Haltom v. Bayer Corp.*, No. 02-60165-4 (Nueces Cnty., Tex. Dist. Ct. May 23, 2003) (final judgment); *Reed v. Bayer Corp.*, No. 2002-311 (Holmes Cnty. Cir. Ct. Miss. Oct. 22, 2008) (final judgment); *Beard v. Bayer AG*, No. 04-CV-011-J (Amite Cnty. Cir. Ct. Miss. Dec. 5, 2005) (final judgment); *Pauley v. Bayer AG*, No. 203-02729 (Phila. Ct. Com. P. Pa. Nov. 23, 2004); *Slaughter v. Bayer Corp.*, No. 2002-41-CV8 (Jones Cnty. Cir. Ct. Miss. Dec. 9, 2003) (final judgment); *Hardy v. Bayer Corp.*, No. 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 (Hinds Cnty. Ct., Miss. Apr. 9, 2003) (final judgment).

On October 16, 2020, Dr. Mark West, Pharm, D., sat for a Rule 30(b)(6) deposition.[2] See Ex. A. Dr. West was a Clinical Science Specialist at Bayer during the life of the Baycol DoD Contracts. While Baycol was on the market, Dr. West spent all of his time on the product. His primary responsibilities were staying abreast of the latest clinical data about Baycol and providing factual clinical presentations regarding Baycol's safety profile to Bayer customers, including DoD. On September 26, 2000, Dr. West ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.[3] Dr. West was thus the key individual at Bayer ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.

On behalf of Bayer, Dr. West testified ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Dr. West's testimony is directly contrary to Relator's fraudulent inducement allegations. To take just a few examples:

| Simpson's SAC Allegation | Dr. Mark West's 30(b)(6) Testimony |
|---|---|
| DoD was interested "in the potential for increased side effects . . . with the 0.8 mg dose" and asked Bayer for safety information about "the issue of myopathies associated with Baycol 0.8 mg" dosages, but Bayer never provided information to DoD indicating that "Bayer was aware of safety issues with Baycol." SAC ¶¶ 88, 90–91. | ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ |

---

[2] Dr. West was not deposed in the MDL.
[3] See https://my.clevelandclinic.org/health/diseases/21184-rhabdomyolysis.

| | |
|---|---|
| "Bayer made material omissions and false statements by stating or implying that [Baycol's] risk of . . . side effects was similar to other statins. . . . If the DoD . . . had known the truth . . . it is unlikely the DoD would have entered into the contract with Bayer or would have extended the contract." SAC ¶ 123. | ███ |
| Bayer "discounted cases of rhabdomyolysis in monotherapy. Instead, Bayer focused attention on rhabdomyolysis as a result of co-prescribing with gemfibrozil, and ignored the data and internal concerns about the increased rhabdomyolysis adverse event reports versus other statins in monotherapy." SAC ¶ 114. | ███ |

Bayer has provided Dr. West's deposition transcript to DoD. DoD has not contested Dr. West's testimony and has produced no contrary evidence. In fact, DoD has been unwilling, to date, to produce a representative for a deposition. After 18 years, discovery is now coming to a close, and DoD has never said it was fraudulently induced or presented any evidence of fraudulent inducement.

5

Evidently unsatisfied with the clear testimony that contradicts her allegations, and having found no documents that refute that testimony,[4] Relator recently served additional discovery requests. Relevant here, she has sought to depose Dr. West *again*, this time in his personal capacity (despite asking Dr. West questions in his "personal capacity" during the 30(b)(6) deposition), *see, e.g.*, Ex. A. at 23:21–25:6; 135:8–137:23; 153:14–155:25, and has also sought to depose seven former employees: Robert Harrison, Casmir Zygmunt, David Rose, Tig Conger, Pat Stenger, Roger Celesk, and Jack Powell. Mr. Zygmunt, Mr. Harrison, Mr. Conger, Ms. Stenger, and Mr. Celesk were deposed over a combined 31 days between 2001 and 2003 during the Baycol MDL, when they were current employees. Even then, however, the individuals were unable to remember many facts, details, and meetings. Relator has their MDL deposition transcripts. Several of these witnesses were also deposed in the Baycol securities litigation in 2007, and Bayer also produced those transcripts to Relator.

---

[4] Indeed, when asked if she has any evidence to contradict Dr. West's testimony, Relator pointed only to an absence of documents *confirming* his testimony. This is no surprise: the relevant events took place two decades ago at a time when most communications were oral and when email was not used or stored like it is today. Ex. A. at 18:1–6; 23:9–10; 52:6–13. But, as a matter of law, confirmatory documents are not needed and the absence of documents to confirm deposition testimony does not create a triable issue. *See e.g.*, *Grobelny v. Baxter Healthcare Corp.*, 341 F. App'x 803, 808 (3d Cir. 2009) (granting summary judgment and observing that "facts testified to in 'deposition testimony[,] if there is no contradictory evidence[,] may be accepted as true for summary judgment purposes without an assessment of the credibility of the witness'"); *McCorvey v. Smith*, No. 08-cv-0151, 2009 WL 2176344, at *4 (S.D. Ala. July 15, 2009) (crediting deposition testimony when "there was no conflicting evidence in the summary judgment record."); *UMG Recordings, Inc. v. Disco Azteca Distributors*, Inc., 446 F. Supp. 2d 1164, 1175 (E.D. Cal. 2006) ("[T]he deposition testimony relied on by plaintiffs is in the record, and speaks for itself, and in any event, defendant offers no contradictory evidence in response to these facts.").

On the parties' meet and confers, Relator stood on her refusal to provide any specifics on why she was seeking any of these depositions or why they outweigh the burdens, maintaining that she has an unqualified right to take up to 15 depositions because that is what the Scheduling Order sets as an upper limit.

## ARGUMENT

"[A] court can—and must—limit proposed discovery that it determines is not proportional to the needs of the case." *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 742 (8th Cir. 2018). The Court should use its broad discretionary authority over discovery to quash Relator's deposition subpoenas.

**I.      THE COURT SHOULD QUASH RELATOR'S SUBPOENAS TO DEPOSE NUMEROUS FORMER BAYER EMPLOYEES.**

"Judges relatively frequently limit or forbid discovery when the cost and burden seem to outweigh the likely benefit in producing" relevant evidence. Wright & Miller § 2008.1. With respect to depositions in particular, "[i]t is important for all parties to understand that[,] prior to taking any deposition[,] they must always assess whether or not a deposition of that witness is truly necessary, based in part upon the time and expense that even a single deposition incurs for all parties involved." *Smith v. Ardew Wood Prod., Ltd.,* No. C07-5641 FDB, 2008 WL 4837216, at *2 (W.D. Wash. Nov. 6, 2008). And, of course, "the scope of discovery is defined by Rule 26(b), and that same scope applies to Rule[] 30" depositions. *Diesel Mach., Inc. v. Manitowoc Cranes, Inc.*, No. CIV 09-4087-RAL, 2011 WL 1343121, at *8 (D.S.D. Apr. 7, 2011).

Several factors increase the burden and decrease any potential benefit from a deposition. First, the burden is higher when the relevant events occurred a long time ago. "Even when witnesses are available and evidence is found, the memories of witnesses may dim with respect to the details of any transaction[.]" *Kakaygeesick v. Salazar*, 656 F. Supp. 2d 964, 984 (D. Minn. 2009). It "compounds the burden" of any deposition, for example, when a witness would need to spend "an inordinate amount of time reviewing a vast number of old files" in an attempt to jog their memory. *See Am. Ins. Co. v. St. Jude Med., Inc.*, No. 08-cv-0013, 2009 WL 10678836, at *3 (D. Minn. Dec. 18, 2009) (quashing Rule 45 deposition subpoena for "events occurring nine years ago"). "Not only [is] this [] difficult and costly, but the benefit to the Plaintiffs would likely be extremely low," because witnesses cannot "be expected" to provide "accurate and detailed accounts of events so far in the past." *Sahu v. Union Carbide Corp.*, 262 F.R.D. 308, 317 (S.D.N.Y. 2009) (refusing depositions when events were 15 to 35 years old). Indeed, *in this case*, even the DoD—Bayer's counterparty to the relevant contracts—has objected to a Rule 30(b)(6) deposition as "unduly burdensome" and noted that it would be "difficult if not impossible to designate an appropriate official who may testify as to … events that occurred almost 20 years ago and involve personnel who are no longer employed at DoD[.]" *See* Ex. B at 3.[5]

Second, cumulative and duplicative depositions are disfavored, and the very nature of MDL proceedings can lead to such duplication. When "MDL depositions have already occurred," therefore, "the burden of re-doing the depositions may be 'undue' and outweigh

---

[5] Bayer is still meeting and conferring with DoD regarding Bayer's *Touhy* request.

8

the usefulness of the information." *Kosek v. Ethicon, Inc.*, No. 18 C 7477, 2020 WL 6203310, at *2 (N.D. Ill. Oct. 22, 2020). Accordingly, to avoid duplication, the subpoenaing party needs to make a "'strong case' before the court allows [a party to re-take a deposition] already taken,'" which includes a "showing of the new information each witness would testify to." *Id*.

Third, these concerns weigh even more heavily on third-parties, including former employees, making the "unwanted burden thrust upon" them a "special consideration." *St. Jude Med.*, 2009 WL 10678836, at *3. Indeed, "a court *must* limit a party's discovery if it determines that … 'the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive.'" *Vale v. Great Neck Water Pollution Control Dist.*, 14-cv-4229, 2016 WL 11269253 at *2–3 (E.D.N.Y. May 31, 2016) (quashing subpoena to depose former employee).

Because these factors all counsel against the requested depositions, and because Relator has not and cannot show that the numerous depositions requested are justified, the Court should "quash[] the subpoenas … because of the undue burden" and the all-but guaranteed waste of everyone's time.[6] *St. Jude Med.*, 2009 WL 10678836, at *3; *Nelsen v. Mayo Clinic*, No. 18-cv-3174, 2019 WL 4728249 *1 (D. Minn. Sept. 27, 2019).

---

[6] These individuals are all former employees who were current employees during the relevant events and the MDL. Accordingly, Bayer believes it has standing to move to quash these subpoenas and deposition requests. Nevertheless, in the alternative, Bayer respectfully moves the Court for a protective order under Rule 26(c) against these depositions because, as outlined in this motion, good cause exists to prevent them. These

9

A. <u>Second Deposition Subpoena to Mark West</u>

Dr. West sat for a 30(b)(6) deposition *in this litigation* barely two months ago, and there is no valid basis to re-depose him in his personal capacity.

*First*, Relator has identified no testimony that Dr. West could provide in his personal capacity that he has not already provided as Bayer's Corporate Representative. When Bayer asked Relator for that information on a meet and confer about this motion, she vaguely stated that she wants to explore "other areas of testimony." At the December 18, 2020 initial dispute conference, Relator did not offer anything more. Relator's inability to say more is, no doubt, because there is complete consistency between Dr. West's role as a corporate representative and his personal role in the relevant events. Courts routinely preclude such "cumulative and duplicative" depositions. *Lawson v. Spirit AeroSystems, Inc.*, No. 18-1100-EFM-ADM, 2020 WL 1285359, at *6 (D. Kan. Mar. 18, 2020); *see also, e.g.*, *State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 254 F.R.D. 227, 233 (E.D. Pa. 2008) (finding no "good cause" to re-depose corporate representative in personal capacity). Relator's request is particularly egregious given that counsel had known Dr. West would be Bayer's designee for weeks in advance and ended Dr. West's 30(b)(6) deposition with approximately 1.5 hours left on the clock, even though Bayer had allowed Dr. West to answer all questions on all topics throughout the deposition. *Cf. Diesel Mach., Inc.*, 2011

---

depositions are needlessly cumulative and unduly burdensome for all involved. *Coleman v. Minn. Pub. Schools*, No. 18-cv-2283 (DSD/ECW), 2020 WL 6042394 *7¬8 (D. Minn. Oct. 13, 2020).

WL 1343121, at *8 (denying request for second deposition even after witness was instructed not to answer certain questions during the first).

*Second*, the basis for Relator's request is transparent—hoping without any basis that Dr. West might provide different answers in his personal capacity than those he already provided as a corporate representative. At the Rule 30(b)(6) deposition, for example, Relator's counsel asked Dr. West a staggering *35 times* ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇.[7] Dr. West unequivocally testified, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Asking the same question a 36th time is not going to produce a different response.

The only argument that Relator raised on the parties' meet and confer was that the Rule 26(f) Report says that, "[i]f a party wishes to depose an individual who was previously produced for a deposition pursuant to Fed. R. Civ. P. 30(b)(6), the opposing party shall not object *solely* on the ground that the witness was previously deposed" (emphasis added).

---

[7] ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

But Bayer is not objecting "solely" on that ground. Instead, Bayer has articulated clear reasons why Relator had a full opportunity to ask Dr. West whatever questions she had, did not use all of her time, and cannot justify imposing this cumulative burden on him. Further, no new facts have arisen since that deposition that would justify a second deposition. That deposition was just two months ago, and nothing has changed since then—DoD still has not asserted it was fraudulently induced or presented any evidence of fraudulent inducement. The Court should quash Relator's duplicative and burdensome subpoena to Dr. West.

### B. Deposition Subpoenas to Five Former Bayer Employees Deposed in the MDL

Relator has subpoenaed five former Bayer employees who sat for a combined 35 days of depositions in the Baycol MDL—the MDL that "arises from a common factual core" with Relator's case—and later in the Baycol Securities Litigation. *In re Baycol Products Liability Litig.*, 08-md-01431-MJD, Dkt. 4258 (Oct. 9, 2008). Bayer has produced the MDL deposition transcripts and requested exhibits, along with each witness's MDL documents and the Securities Litigation deposition transcripts. Relator has not identified anything new that she seeks from them, and she has not overcome the clear burden the depositions would impose, especially considering that the allegedly defrauded party has not itself said it was defrauded and does not want to sit for a deposition given the "undue burden." Ex. B at 3.

On one side, there is ample evidence to support the "compound[ed] burden" that any duplicative depositions would impose. *St. Jude Med.*, 2009 WL 10678836, at *3. The

31 days of MDL depositions were all taken within a year or two of the relevant events, and yet, *even then*, the witnesses had difficulty remembering particulars about interactions with DoD, specific documents, or conversations not reflected in documents.  Mr. Harrison, for example, ▌

▌ Mr. Zygmunt likewise could not recall ▌

▌. *That was 18 years ago.* There is absolutely no reason to expect an epiphany now, when memories are surely much "dim[mer]." *Kakaygeesick*, 656 F. Supp. 2d at 984; *see also Sahu*, 262 F.R.D. at 31 ("no witness can be expected to provide accurate and detailed accounts of events so far in the past").

More than that, the record confirms that the witnesses either do not remember, have nothing relevant to say, or both. In preparation for the 30(b)(6) deposition, for instance, Dr. West ▌

▌. Others testified that they had no relevant information even decades ago: ▌

13

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████

Against this duplication and significant burden, Relator must put forward evidence that supports a specific belief that she will learn "new, relevant information" not already available from previous MDL testimony or from the documentary record. *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 193 (1st Cir. 2001). It is *not* enough to "'merely ha[ve] 'hope' that the testimony of [these witnesses] will contradict the testimony" of Dr. West or their own prior depositions. *Id.*

Mere hope, however, is all that Relator has—and it is an unfounded hope at that. On the parties' December 15, 2020 meet and confer about this motion, Bayer re-raised its objections and again asked Relator to explain why she was seeking this testimony and why it outweighs the burden and cumulative objections. Relator categorically refused to provide any specifics. Indeed, when Bayer's counsel sought to discuss the witnesses one-by-one, Relator said that her position was the same across the board: she asserts an absolute and unfettered right to take up to 15 fact depositions, simply because that is the Scheduling Order's upper limit, and that she has no obligation to provide Bayer with any explanation or justification for how those depositions outweigh their burden and cumulative nature and would be proportional to the needs of the case. In her view, she can take 15 depositions

regardless of how burdensome they are. This is not correct. *See, e.g.*, *Alexander v. 1328 Uptown Inc.*, 2019 WL 4929931 *6 (D. Minn., Oct. 7, 2019) (rejecting request for a deposition where "[party] has not identified any information [the witness] may have that is relevant to an issue in this case *and* that would not be cumulative or duplicative of information held by [other witnesses]"(emphasis added)); *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002) (affirming district court's refusal to compel deposition when the requesting party failed to establish the information they would obtain "was more than marginally relevant" in the face of the clear burdens and other means of obtaining it).

Relator's only proffered basis that she has articulated for the depositions is that Mr. Harrison and Mr. Zygmunt provided clinical communications to DoD. True enough, but that was also the case in 2002 and 2003, when neither could not recall specifics about those communications. She also contends that the MDL depositions of Tig Conger, Pat Stenger, or Roger Celesk did not cover communications with DoD in detail. But that is entirely unsurprising given that none of these individuals were in DoD-facing roles. Their work on drug safety, clinical communications, and marketing at Bayer was squarely and extensively covered in the MDL depositions, and Relator has not pointed to any DoD-specific evidence to support additional questions. Again, Relator flatly refused to provide any of this information when Bayer attempted to meet and confer on the issue. Relator did not then and "does not [now] specify" any "'new' facts, [or] why the[ witnesses] did not or could not have testified to those facts in the MDL." *Kosek*, 2020 WL 6203310, at *3.

15

"Without any showing of the *new* information each witness would testify to, the Court [should] not allow re-depositions." *Id.* at *3 (emphasis added) (quashing depositions of 10 witnesses previously deposed in a closed MDL); *see also Ameristar Jet Charter*, 244 F.3d at 193 (quashing deposition subpoenas for three of party's employees, two of whom had previously been deposed on the same matter); *Sheets v. Sorrento Villas, Section 5 Ass'n, Inc.*, No. 8:15-cv-1674, 2016 WL 11493316, at *2 (M.D. Fla. Aug. 19, 2016) (quashing second deposition). The Court should quash these subpoenas because they are burdensome, duplicative, and disproportionate to the needs of the case.

### C. Deposition Subpoenas to Two Additional Former Employees Not Deposed in the MDL With No Valid Justification

Relator's requests to depose two additional former Bayer employees who were not deposed in the MDL, David Rose, and his direct supervisor, Jack Powell, are equally deficient. The undue burden outweighs the duplicative and *de minimis* potential relevance of the proposed depositions.

The same two-decade time lapse is certain to impact both Mr. Rose and Mr. Powell's ability to recall and testify about the relevant events. It "compounds the burden" associated with any deposition when a witness would have to spend "an inordinate amount of time reviewing" decades-old records. *St. Jude Med.*, 2009 WL 10678836, at *3. This Court quashed a subpoena as overly-burdensome when it "focus[ed] on events occurring nine years ago," *St. Jude Med.*, 2009 WL 10678836, at *3, and the passage of time at issue here is *twice as long*. No doubt that is why DoD continues to argue that compliance with Bayer's deposition subpoena would be "difficult if not impossible." Ex. B. at 3.

16

Mr. Rose and Mr. Powell's status as non-parties and former employees also warrant "special consideration" when assessing burden. *St. Jude Med.*, 2009 WL 10678836, at *3. That special consideration is compelling. Mr. Rose last worked at Bayer in February 2005 and has spent the last 15 years at one of Bayer's competitors, Merck. A deposition would require permission from Merck's legal department to take time off to prepare and sit for the deposition—imposing a substantial burden on Mr. Rose at any time (but especially so during a global pandemic). Mr. Powell has not worked at Bayer since 2002, and is, according to the best information Bayer currently possesses, an 86-year-old retiree.

Any vague claims of potential relevance of Mr. Rose and Mr. Powell's testimony Relator may make cannot overcome or outweigh these significant burdens, because she can obtain—indeed, has obtained—the sought-after information "through other, less intrusive means," including documents and earlier depositions of others. *Nelsen*, 2019 WL 4728249 *1 (quashing subpoena). Relator has provided no justification for taking Mr. Powell's deposition at all. Relator's only stated justification for taking Mr. Rose's deposition is "his involvement in Bayer's communications with the Department of Defense and familiarity with Bayer's contract with the Department of Defense for Baycol." Ex. J at 1. But that was the same exact topic on which Relator extensively questioned Dr. West as Bayer's 30(b)(6) witness, and she has not explained how Mr. Rose's "involvement" warrants duplicative questioning.

Nor could she. For one thing, Dr. West testified ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

17

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████

For another thing, there is no reason—and again Relator has not identified any—to expect Mr. Rose (or Mr. Powell) to have anything else to say about these 20-year-old events. Mr. Rose was "Manager of Federal Accounts – Department of Defense," but that job was a relationship manager with DoD, passing clinical questions from DoD to Bayer's Clinical Communications Scientists, such as Dr. West. Mr. Powell was Mr. Rose's supervisor, managing all of Bayer's government accounts. ████████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████

Relator is now simply engaged in an impermissible fishing expedition. Because Relator "has the information [she] needs," and "because of the undue burden thrust upon the nonparties," Mr. Rose and Mr. Powell, the Court should quash the subpoenas. *St. Jude Med.*, 2009 WL 10678836, at *3.

## CONCLUSION

For the foregoing reasons, Bayer respectfully asks the Court to enter an Order quashing Relator's deposition subpoenas for these eight duplicative and burdensome depositions.

Dated: December 22, 2020

Respectfully submitted,

SIDLEY AUSTIN LLP

 /s/ Kristin Graham Koehler            .

Kristin Graham Koehler (*pro hac vice*)
kkoehler@sidley.com
Jonathan F. Cohn (*pro hac vice*)
jcohn@sidley.com
Joshua J. Fougere (*pro hac vice*)
jfougere@sidley.com
Jacquelyn E. Fradette (*pro hac vice*)
jfradette@sidley.com
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000

DORSEY & WHITNEY LLP

/s/ John Marti                  .

John Marti (#0388393)
Marti.john@dorsey.com
Alex P. Hontos (#0388355)
Hontos.alex@dorsey.com
Caitlin L.D. Hull (#0398394)
Hull.caitlin@dorsey.com
50 S. Sixth St., Ste. 1500
Minneapolis, MN 55402
(612) 340-2600

*Counsel for Defendants
Bayer Corporation, Bayer AG, and
Bayer Healthcare Pharmaceuticals, Inc.*