UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re BAYCOL PRODUCTS LITIGATION, | MDL No. 1431 |
| This Document Relates to: | |
| United States ex rel. Simpson, | Civ. No. 08-5758 (MJD/ECW) |
| | Hon. Michael J. Davis |
| Plaintiff, | |
| v. | |
| Bayer Healthcare et al., | |
| Defendants. | |

**DECLARATION OF KYLE C. BISCEGLIE IN SUPPORT OF MOTION BY
OLSHAN FROME WOLOSKY LLP SEEKING: (1) INTERVENTION;
(2) REASONABLE ATTORNEYS' FEES AND RELATED COSTS**

OLSHAN FROME WOLOSKY LLP
*Proposed Intervenor and*
*Former Counsel to Relator Laurie Simpson*
1325 Avenue of the Americas
New York, New York 10019
(212) 451-2300

**KYLE C. BISCEGLIE** declares under penalty of perjury, pursuant to 28 U.S.C. § 1746:

1.	I am a litigation partner at Olshan Frome Wolosky LLP ("Olshan") duly licensed to practice law and a member in good standing with the State Bar of New Jersey since 1993 and the State Bar of New York since 1995. I have been admitted *pro hac vice* to this Court at the request of Olshan's retained local counsel in this matter, D. Clay Taylor, Esq. (*See* Order Granting Motion for Admission Pro Hac Vice, ECF Docket No. 283.) I submit this declaration in support of Olshan's motion seeking: (1) intervention in this matter; and (2) reasonable attorneys' fees and related costs.

2.	Olshan is a mid-sized law firm with locations in New York and New Jersey and a nationwide complex litigation practice. Olshan's litigation attorneys represent publicly and privately held companies, as well as individuals in a wide range of commercial litigation matters before federal and state courts, administrative agencies, self-regulatory organizations, and in arbitrations.

3.	Olshan represented plaintiff Laurie Simpson (the "Relator") in this matter from June 22, 2009 through July 23, 2010, formally withdrawing from the case on November 11, 2010. By contract, the Relator assigned her right to recovery of reasonable attorneys' fees and expenses to Olshan. As such, Olshan is entitled to recover all reasonable attorneys' fees and expenses incurred on Relator's behalf pursuant to 31 U.S.C. § 3730(d)(2).

4.	Olshan coterminously represented Ms. Simpson in a related *qui tam* action involving another Bayer product, Trasylol, in the District of New Jersey, *U.S. ex rel. Simpson v. Bayer et al.,* No. 2:05-cv-3895 (D.N.J.) (JMV/LDW) (the "Trasylol Matter"), which case was resolved by settlement jointly with this matter as part of Defendants' payment of $38.9 million to the United States, $1.14 million to various states and the District of Columbia, and $6 million to

2

the Relator. *See* Settlement Agreement, enclosed as <u>Exhibit A</u>. The Department of Justice made a public announcement regarding the settlement, enclosed as <u>Exhibit B</u>. Olshan recorded its time and tracked its disbursements on the Trasylol Matter separately, and is making a separate fee application in the District of New Jersey for its work on the Trasylol Matter.

5. I understand that the Relator's current counsel, the law firm of Kessler Topaz Meltzer Check LLP ("Kessler Topaz"), has filed or will file a Motion for Award of Attorneys' Fees and Expenses Pursuant to 31 U.S.C. § 3730(d) (the "Relator's Fee Motion"). To the extent the Relator's Fee Motion make arguments supportive of and beneficial to Olshan, Olshan joins in Relator's Fee Motion for the work our firm performed in this case.

6. Olshan separately moves to intervene in Relator's Fee Motion to protect its interest and seek its fees, based upon the work our firm performed in this case. In the event that this Court denies the Relator's Fee Motion, I respectfully submit, for the reasons set forth herein and in the accompanying memorandum of law, that Olshan is nonetheless entitled to its reasonable attorneys' fees and related costs.

**<u>Engagement Letter</u>**

7. Olshan's work on behalf of the Relator was undertaken pursuant to an engagement letter dated September 24, 2009 between Olshan and Ms. Simpson (the "Engagement Letter"), a copy of which is attached hereto as <u>Exhibit C</u>. The Engagement Letter covered both this matter and the related Trasylol Matter pending in the District of New Jersey.

8. Pursuant to the Engagement Letter, the Relator was not obligated to compensate Olshan for work done on the Relator's behalf unless a *Qui Tam* Award (as defined in the Engagement Letter) or attorneys' fees and expenses were realized. In that regard the Engagement Letter provided as follows:

  3. Experts, Consultants and Other Counsel and *Qui Tam* Award.

  (a) Olshan is authorized to associate with such investigators, experts, consultants and additional counsel outside Olshan as Olshan and Relator may deem necessary, and, unless such authority is expressly delegated by it, Olshan shall at all times have authority over all investigators, experts and consultants and shall at all times be lead counsel retained in the Lawsuits.

  (b) Any fees charged by any such investigator, expert or consultant (other than additional counsel) that are incurred or advanced by Olshan may be recovered by it under paragraph 4(b).

  * * *

  (d) Relator understands that if there is a settlement or judgment against the Defendants, Relator will generally be entitled to receive a portion (the "*Qui Tam* Award") of the damages and other recoveries awarded to the United States and the States. Relator understands that this fee (exclusive of fees and expenses) is not required by law, but has been negotiated between Relator, Olshan and BSF [Boies, Schiller & Flexner LLP]. With respect to the *Qui Tam* Award, Relator shall pay to Olshan 40% of the Relator's portion of any *Qui Tam* Award that may result from the Lawsuits, and authorizes Olshan to deposit such funds in an escrow account to be held by Olshan. . . .

  4. Fees and Expenses.

  (a) In addition, the False Claims Act allows the court to require the Defendants to pay a successful relator's litigation costs and expenses, and such an award of costs and expenses is separate and apart from the *Qui Tam* Award. **To the extent that any costs and expenses advanced or incurred by Olshan, which expenses shall not be incurred without the consent of Relator, and are later awarded to Relator by the court or recovered through settlement, Relator hereby assigns to Olshan the proceeds of such award or settlement.**

  * * *

  (c) (i) Relator understands that . . . the False Claims Act allows the court to require one or more of the Defendants to pay reasonable attorneys' fees ("Statutory Fees"), and such an award of fees is also separate and apart from the *Qui Tam* Award. Statutory Fees are based on the hours reasonably spent by counsel on the Lawsuit and such counsel's reasonable hourly rates. **To the extent**

4

> *that Olshan's . . . Statutory Fees are awarded to Relator by the court or recovered through settlement, Relator hereby assigns to Olshan . . . the proceeds of such award or settlement . . . .*
>
> \* \* \*
>
> (h)   As security for the payment of all legal fees and costs and expenses due to Olshan . . . ***Relator hereby grants to Olshan . . . an attorneys' lien on, and a first-priority security interest in, any Qui Tam Award and any other recovery*** Relator receives or is entitled to receive or which Olshan or any other party receives on Relator's behalf, whether by judgment, award, settlement or otherwise in connection with the Lawsuits. In addition, ***Relator hereby assigns, transfers and conveys to Olshan . . . all of Relator's right, title and interest in, to and under any Qui Tam award and any such other recovery in an amount equal to all expenses due Olshan . . . under [its] engagement[].***

(Engagement Letter ¶¶ 3-4 (emphasis added).)  Accordingly, pursuant to the Engagement Letter—and in consideration for Olshan's agreement to work on a contingency basis—the Relator assigned to Olshan any interest that she otherwise would have had in any costs and expenses and reasonable attorneys' fees realized from the case, and expressly granted Olshan an attorneys' lien and first-priority security interest in monies recovered in this case.

9.   Moreover, the Engagement Letter expressly provided that Olshan's compensation would remain due and owing from the Relator, even in the event that Olshan ceased representation in this case:

> 6.   Discharge or Withdrawal of Olshan: Termination of Engagement.
>
> … (c)  If Olshan chooses to terminate this agreement, or if Relator terminates this agreement, Olshan shall be entitled to receive its reimbursed out-of-pocket expenses and its awarded statutory attorney fees.

(Engagement Letter ¶ 6(c).) Olshan has a direct pecuniary interest in recovering the attorneys' fees and expenses it incurred while representing the Relator.

5

**Intervention**

10. In the event that this Court does not grant Olshan's fees and expenses as part of the Relator's Fee Motion, Olshan seeks intervention in this matter, as of right pursuant to Federal Rule of Civil Procedure 24(a)(2) or, alternatively, permissively under Federal Rule of Civil Procedure 24(b). The Court entered a final Order on December 8, 2022 dismissing the action with prejudice, retaining jurisdiction of Relator's claims for reasonable attorneys' fees, expenses and costs pursuant to 31 U.S.C. § 3730(d)(2) and (h)(2) and analogous provisions of applicable state law, and setting January 6, 2023 as the date for filing any motions for reasonable attorneys' fees, expenses and costs. (ECF Docket No. 281.) The Clerk of the Court entered judgment the following day. (ECF Docket No. 282.) Olshan moved to intervene promptly and by the date set by the Court for fee applications.

11. The following facts support Olshan's intervention in Relator's Fee Motion.

12. Olshan has a unique and exclusive interest in recovering attorneys' fees in Relator's Fee Motion. Per the Engagement Letter, the Relator has assigned all of Relator's interest in attorneys' fees, expenses and costs, with respect to any work performed by Olshan, to the firm. Moreover, Olshan has a statutory lien on such funds, pursuant to Minnesota Statutes section 481.13, and an express contractual lien, pursuant to the terms of the Engagement Letter.

13. Without granting intervention, Olshan's interest is at risk of impairment. While this firm has conferred regularly with Kessler Topaz regarding the proper timing and filing of fee applications, Kessler Topaz advised Olshan that it was not undertaking to present Olshan's own fees to the Court nor did Kessler Topaz ask to review or become familiar with Olshan's invoice and time entries pertaining to this case. Following an unsuccessful attempt by Kessler Topaz at a global reconciliation of attorneys' fees in this matter, in which Olshan's fees were included, it is

my understanding that Olshan is expected, like any of the Relator's prior law firms, to submit its own motion for attorneys' fees, which details will not be presented in the Relator's Fee Motion.

14. Olshan's interest may not be adequately protected by the Relator nor Kessler Topaz, which has first-hand knowledge of its own work and a pecuniary interest in its own fees but not necessarily in Olshan's. While we join in the Relator's Fee Motion to the extent supportive of our fee application, Olshan has an independent need to represent its own interests in this case and is best situated to do so, as our firm is in sole possession of our invoice from this matter. Kessler Topaz has advised that it does not intend to address Olshan's nor any prior firm's work performed in this case nor account for such work in its fee application.

## Attorneys' Fees and Related Costs

15. Robert W. Sadowski, Esq. was a partner in Olshan's litigation group who served as lead counsel in this matter. Raphael Katz, Esq. was the primary associate involved throughout Mr. Sadowski's handling of the case.[1] They were assisted by other litigation attorneys at the firm including Christine Wong, Esq.[2] and Marco Santori, Esq. Mr. Sadowski and Mr. Katz left Olshan in 2010 to join Diamond McCarthy LLP. Olshan ceased involvement in this matter after July 2010. Ms. Wong and Mr. Santori left Olshan sometime after that.

16. From even before the signing of the Engagement Letter until Olshan ceased representation in this matter, a team of Olshan attorneys undertook substantial effort to litigate the matter efficiently and effectively. Olshan actively represented the Relator through over 1,000 hours of professional time devoted to: (1) extensive discovery, including multiple document productions and reviews; (2) rigorous privilege claims, asserted in the Relator's Opposition to Bayer's Motion to Compel and again in a Sur-Reply against said Motion to Compel, filed with the

---

[1] Mr. Sadowski and Mr. Katz have significant experience and expertise in *qui tam* and other complex litigation.
[2] Ms. Wong has significant commercial litigation experience including managing discovery.

7

Court's permission upon Olshan's expedited motion; and (3) other motion practice which culminated in the preparation and filing of the Relator's Opposition to Bayer's Motion to Dismiss the Amended Complaint and, subsequently, (4) oral argument on the Motion to Dismiss conducted solely by Olshan on the Relator's behalf.[3]

17. Olshan's attorneys relied on the assistance of paralegals where appropriate[4] and incurred significant out-of-pocket expenses in furtherance of its efforts in this action.[5]

18. As listed in Exhibit D, Mr. Sadowski, Mr. Katz, and the rest of the team spent a total of 1,086.45 hours on this litigation, from June 22, 2009 through July 23, 2010. Multiplied by the 2022 hourly rates of peer level Olshan litigation attorneys and staff, the total lodestar is $689,334.75 in legal expenses. I respectfully submit that this sum is a fair award, in light of the services rendered, the risks taken by our firm, the extraordinary delay in payment, and the successful results obtained. Olshan is not seeking an enhancement of this lodestar.

19. Olshan attorneys and staff recorded their time on a daily basis, contemporaneously in tenth-of-an-hour increments per Olshan's standard billing practices, and entered it into Olshan's computerized billing software. A billing statement attached hereto as Exhibit E reflects all time entered into Olshan's billing software and billed from June 22, 2009 through July 23, 2010.

---

[3] The law firm of Boies, Schiller & Flexner LLP also represented the Relator during this time, but Olshan singlehandedly filed the Relator's Sur-Reply against Bayer's Motion to Compel, plus singlehandedly engaged in oral argument on the Relator's behalf against attorneys from multiple law firms that represented Bayer in support of Bayer's Motion to Dismiss.

[4] In order to minimize costs, Olshan attorneys delegated non-substantive and more rudimentary legal work to paralegals whenever possible. Paralegals were utilized for such tasks as: (i) maintaining case files and records; (ii) making copies; (iii) preparing and finalizing documents for electronic filing; and (iv) sending courtesy copies of documents to parties involved.

[5] All of the out-of-pocket expenses that were incurred in connection with this case are those that are customarily billed by Olshan to its clients.

20. Olshan also incurred $11,236.83 in out-of-pocket expenses in connection with this litigation as incurred and entered into Olshan's accounting system, as listed on pages 34-35 of Exhibit E. A more detailed explanation of such expenditures is attached hereto as Exhibit F.

21. Mr. Sadowski, who passed away in 2022, was a seasoned *qui tam* attorney with over twenty-five years of experience litigating complex cases at the time he represented Ms. Simpson. I state the following about Mr. Sadowski, upon information and belief, from having served with and known him as a colleague and partner and drawing from declarations previously made by Mr. Sadowski and Mr. Katz in other *qui tam* matters. *See U.S. ex rel. Rubar v. Hayner Hoyt Corp.*, 306 F. Supp. 3d 478 (N.D.N.Y. 2018); *U.S. ex rel. Doe v. Acupath Laboratories, Inc.*, No. 10-cv-4819 (LDW), 2015 WL 1293019 (E.D.N.Y. Mar. 19, 2015).

22. Before joining Olshan, Mr. Sadowski was an Assistant United States Attorney for the Southern District of New York for approximately ten years. During his tenure in that office, he held the position of Health Care Fraud Coordinator and was responsible for supervising all civil health care fraud prosecutions in the district, as well as the investigation, litigation, and settlement of False Claims Act fraud prosecutions. Mr. Sadowski prosecuted Medicare and Medicaid fraud cases, Stark violations, kickbacks, cost report improprieties, false billings, quality of care failures, and drug safety violations. He also handled matters involving federal grant fraud, housing fraud, and accounting fraud. Before his appointment as an Assistant United States Attorney, Mr. Sadowski worked as an Internal Revenue Service trial attorney for four years.

23. While serving in the United States Attorney's Office, Mr. Sadowski received the United States Attorney General's John Marshall Award and the United States Attorney's Office Director's Award for Superior Performance. Mr. Sadowski held a B.A. from the University of

Wisconsin, a J.D. from Brooklyn Law School, and an LL.M in Taxation from New York University School of Law.

24. I, also, knew and worked with Mr. Katz when he was an Olshan associate and state the following based on both my personal knowledge and information and belief, based upon Mr. Katz's Federal Bar Association's biography and declarations submitted in other *qui tam* matters. *See U.S. ex rel. Rubar*, 306 F. Supp. 3d; *Acupath Laboratories*, 2015 WL 1293019; *About the Presenters*, Fed. Bar Ass'n, https://www.fedbar.org/event/qui-tam-section-virtual-false-claims-act-today-district-of-new-hampshire-vermont/. Mr. Katz has spent most of his legal career representing relators in False Claims Act matters. He founded and became partner of a litigation boutique with Mr. Sadowski specializing in commercial and *qui tam* litigation, and was named as a Rising Star Super Lawyer in 2013, 2014, 2015, and 2016 for the New York Metro region. Mr. Katz was also a guest lecturer on "The Ethics of Whistleblowing" for Lifelong Learning at Westchester Community College, a presenter for the Federal Bar Association on "False Claims Act Today—Districts of New Hampshire & Districts of Vermont," and has otherwise spoken on multiple occasions about the False Claims Act, including on television and the radio.

25. Upon information and belief, Mr. Katz is currently an Assistant United States Attorney for the District of New Hampshire, in which role he serves as the Affirmative Civil Enforcement Coordinator. He holds a B.A. from Brown University and a J.D., with honors, from Emory University School of Law.

26. Mr. Sadowski and Mr. Katz have successfully represented relators in numerous other cases. *See U.S. ex rel. Bisk v. Westchester Medical Center*, No. 1:06-cv-15296 (LAK/FM) (S.D.N.Y. Dec. 21, 2015); *U.S. ex rel. Mazza v. Miami Dade County*, No. 1:10-cv-24546 (KMM)

(S.D. Fla. 2014); *U.S. ex rel. Doe v. Structured Employment Economic Development Corp.*, No. 1:11-cv-06425 (AKH) (S.D.N.Y. 2015).

27. I, also, knew and worked with the other Olshan litigation associates, such as Ms. Wong, who worked on this matter, all of whom were skilled, reputable and capable attorneys for their respective experience levels.

28. Olshan seeks reimbursement of its attorneys' fees based on the standard 2022 billing rates for Olshan litigation partners with more than 20 years of experience, eighth-year litigation associates, fifth-year litigation associates, and first-year litigation associates,[6] which were $860, $760, $590, and $470 per hour, respectively, as reflected in Exhibit D. These rates were customarily billed by Olshan to its clients in 2022.

29. Susan M. Coler, Esq. provided a fee declaration with regard to Mr. Sadowski's rate in comparison to the Minnesota market.

30. Olshan's rates are consistent with, and in some instances lower than, the market rates charged by attorneys in New Jersey for similar work where the related Trasylol Matter is venued. *See* the Declaration of James N. Lawlor, Esq., who is Olshan's fee declarant in New Jersey for the Trasylol Matter, at Exhibit G.

31. Olshan also expended, and hereby seeks compensation for, $94,663.20[7] in costs in connection with preparing this fee application through January 5, 2023. These costs appear in Exhibit H, and may increase as this litigation progresses. The final amount of such fees on fees should therefore include any additional litigation costs that Olshan reasonably incurs from this point forward.

---

[6] These were the experience levels of Mr. Sadowski, Ms. Wong, Mr. Katz, and Mr. Santori at the time of Olshan's representation in this matter.
[7] This total reflects $90,321.00 in legal expenses plus $4,342.20 in out-of-pocket disbursements. *See* Ex. G.

11

32. The Defendant was represented by multiple firms in this matter during the time of Olshan's involvement including Sidley Austin LLP, whose 2020 rates are publicly available *via* fee applications in other cases. Its First Interim Fee Application in the case *In re Boys Scouts of America and Delaware BSA, LLC*, No. 20-bk-10343 (Bankr. D. Del.), ECF Docket No. 948-1, indicates that Sidley's 2020 rates were substantially higher than Olshan's 2022 rates, with a Debtor Blended Rate of $1,190.06 and Non-Bankruptcy Blended Rate of $1,155 for partners and $892.65 and $874 for Debtor and Non-Bankruptcy associates, respectively, as reflected in Exhibit I.

33. Olshan increased its 2023 rates, effective January 1, 2023, which rates are higher than Olshan's 2022 rates. *See* Exhibit D. Olshan is not seeking reimbursement at its 2023 rates.

34. I have communicated with Relator's current counsel at Kessler Topaz as well as counsel for Mr. Sadowski's business estate and other prior Relator's counsel including David Stone, Esq. previously with Boies Schiller Flexner LLP about, among other things, the process and timing of the filing of fee applications. Kessler Topaz also communicated with and elicited information from Olshan in 2022 as part of an effort to mediate a global resolution of attorneys' fees with Defendants. I was advised that those efforts were unsuccessful which is why fee applications are now ripe. As a result, Kessler Topaz is aware that Olshan would be intervening and seeking reimbursement of its fees as part of Relator's Fee Motion. Upon information and belief, the Defendants, likewise, knew that prior counsel had their own fee applications as part of Relator's Fee Motion.

35. I respectfully submit that the work undertaken by Olshan in this action, including subsequently to moving for attorneys' fees, was reasonable and necessary.

36. In summary, in this fee application, Olshan seeks a total of $795,234.78 for its reasonably incurred attorneys' fees, out-of-pocket expenses, and fee application costs, computed as follows:

| *Fee/Expense* | *Amount* |
|---|---:|
| Legal Expenses | $689,334.75 |
| Out-of-Pocket Expenses | $11,236.83 |
| Fee Application Fees and Disbursements (as of January 5, 2023) | $94,663.20 |
| **TOTAL** | **$795,234.78** |

Dated: New York, New York
       January 6, 2023

**OLSHAN FROME WOLOSKY LLP**

By:   */s/ Kyle C. Bisceglie*
      Kyle C. Bisceglie (*pro hac vice*)

In Association With:
***Taylor Fricton, PLLC***
D. Clay Taylor (#204857)
7300 Metro Blvd., Suite 350
Edina, MN 55439
Phone: 612.904.7376
Email:  clay@replawyer.com

13